O’Connor, J.,
concurring in part and dissenting in part.
{¶ 37} I concur in the court’s judgment that R.C. 2919.123 prohibits a physician from knowingly providing mifepristone to induce an abortion beyond the 49th day of pregnancy because, pursuant to 21 C.F.R. 314.520, the FDA restricted the use of mifepristone to women who certify by executing a patient agreement that they believe that they are no more than 49 days pregnant. I dissent from the holding that R.C. 2919.123 prohibits all off-label uses of the drug.
A
{¶ 38} R.C. 2919.123 permits the administration of mifepristone to induce abortion in accordance with federal law, including the FDA’s approval letter and package-labeling materials. It forbids the administration of mifepristone to women who are past the 49-day gestational limit. When the FDA concludes that a drug product can be safely used only if distribution or use is restricted, it can require such postmarketing restrictions as are needed to ensure safe use. Relying on this authority, described in 21 C.F.R. 314.520, the FDA set forth the following specific restrictions in its approval letter on the use of mifepristone:
{¶ 39} 1. The drug must be administered by a qualified physician.
{¶ 40} 2. The physician must provide each patient with a Medication Guide and Patient Agreement.
{¶ 41} 3. The physician must fully explain the procedure to each patient.
{¶ 42} 4. The physician must give the patient an opportunity to read and discuss both the Medication Guide and the Patient Agreement.
{¶ 43} 5. The physician must obtain the patient’s signature on the Patient Agreement and must sign it as well.
{¶ 44} The Patient Agreement requires the patient to certify that she believes that she is no more than 49 days pregnant. In requiring a patient to sign the *370 patient agreement, the FDA prohibits the use of mifepristone outside of the 49-day gestational period. It is the requirement of the patient agreement that indicates the limitation on the use of mifepristone. I thus concur with this result reached by the majority.
B
(¶ 45} Despite agreeing that the FDA has limited the use of mifepristone and that the General Assembly has enacted that limitation into law, I dissent from the majority’s conclusion that R.C. 2919.123 prohibits all off-label uses of the drug.
{¶ 46} R.C. 2919.123 requires that for the purpose of abortion, mifepristone must be administered by a qualified physician in accordance with federal law, including the FDA’s drug-approval letter and labeling materials. The majority relies on language in the drug-approval letter that states, “Mifepristone is indicated for use in the termination of pregnancy (through 49 days’ pregnancy) and has no other approved indication for use during pregnancy” to conclude that use of mifepristone after the 49-day limit is not in accordance with the drug-approval letter and therefore violates R.C. 2919.123. By approving the use of mifepristone for the purpose of abortion during the first 49 days of pregnancy, however, the FDA did not prohibit doctors from varying the administration, timing, or dosage of the drug.
{¶ 47} It is well accepted that after the FDA approves a drug for use, doctors may prescribe the drug for off-label uses. 12 FDA Drug Bulletin (Apr. 1982) 4, quoted in Weaver v. Reagen (C.A.8, 1989), 886 F.2d 194, 198 (“ ‘Once a product has been approved for marketing, a physician may prescribe it for uses or in treatment regimens or patient populations that are not included in approved labeling’ ”). See also Planned Parenthood Cincinnati Region v. Taft (C.A.6, 2006), 444 F.3d 502, 505; Klein v. Biscup (1996) 109 Ohio App.3d 855, 863-864, 673 N.E.2d 225. Indeed, the Eighth District Court of Appeals recognized that “ ‘FDA approved indications were not intended to limit or interfere with the practice of medicine nor to preclude physicians from using their best judgment in the interest of the patient.’ ” Id. at 863, 673 N.E.2d 225, quoting Weaver, 886 F.2d at 198. “Thus, the decision whether to use a drug for an off-label purpose is a matter of medical judgment, not of regulatory approval.” Id. at 864, 673 N.E.2d 225.
{¶ 48} The law recognizes that medical judgments are best left to the sound discretion of those with the education, training, and experience to make the best-informed decisions- — physicians. “Good medical practice and the best interests of the patient require that physicians use legally available drugs, biologies and devices according to their best knowledge and judgment.” United States Food and Drug Administration, Information Sheet: Guidance for Institutional Review Boards and Clinical Investigators 1998 Update, available at http://www.fda.gov/oc/ *371 ohrt/irbs/offlabel.html. Although doctors and other health-care professionals are not immune from valid limitations on the practice of medicine, those limitations must be imposed properly.
{¶ 49} Because the FDA’s approval of the use of mifepristone within the 49-day gestational limit does not prohibit off-label use of the drug, other uses are also in accordance with federal law. If the legislature intended to forbid all off-label uses of mifepristone, it could have expressly done so. Instead, it limited the use of the drug to those uses that are in accordance with federal law. Thus, I would hold that although R.C. 2919.123 restricts the delivery of the drug to women no more than 49 days pregnant because of the FDA’s required patient agreement, I do not agree that the statute prohibits all off-label use of mifepristone. Accordingly, I concur in part and dissent in part.
Lanzinger, J., concurs in the foregoing opinion.